1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREW PAUL SILVAS, III,

11          Plaintiff,                        No. 2:08-cv-01571 KJN

12      v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
            Defendant.                        ORDER
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner" or "defendant") denying plaintiff's application for Disability

18   Insurance Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. (the

19   "Act").[1]  In his motion for summary judgment, plaintiff principally contends that the

20   Administrative Law Judge ("ALJ") erred by:  (1) failing to accurately characterize the medical

21   evidence and credit the opinions of the treating and examining physicians and psychologists

22   without a legally adequate reason for doing so; (2) rejecting the statements of plaintiff and third

23   _____

24        [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
25   proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73;
     Local Rule 301.  (Dkt. Nos. 8, 9.)  This case was reassigned to the undersigned by an order
26   entered February 9, 2010.  (Dkt. No. 27.)

1 parties regarding his functional limitations without clear and convincing reasons for doing so;

2 and (3) failing to properly assess plaintiff's residual functional capacity and properly credit the

3 testimony of the vocational expert.  (Dkt. No. 22 at 1.)  The Commissioner filed a cross-motion

4 for summary judgment.  (Dkt. No. 26.)

5       After careful consideration of the entire record, the arguments presented and for

6 the reasons stated below, the court denies plaintiff's motion for summary judgment and grants

7 the Commissioner's cross-motion for summary judgment.

8 I.     BACKGROUND

9       A.     Procedural Background

10       On April 18, 2005, plaintiff filed an application for supplemental security income,

11 alleging disability beginning on October 22, 2004.  (Administrative Transcript ("AT") 16, 50.)

12 The Social Security Administration denied plaintiff's application initially and upon

13 reconsideration.  (AT 16.)  Plaintiff filed a timely request for a hearing, and the ALJ conducted a

14 hearing on August 22, 2007 (AT 16.)  Plaintiff, who was represented by counsel, testified at the

15 hearing.  (AT 16.)  Additionally, a vocational expert and plaintiff's mother testified at the

16 hearing.  (AT 16.)

17       In a decision dated November 27, 2007, the ALJ denied plaintiff's application.

18 (AT 16-23.)  The ALJ found that plaintiff had the residual functional capacity to perform a full

19 range of work at all exertional levels in jobs that required only simple instructions, and therefore

20 was not under a disability within the meaning of the Social Security Act.[2]  (See AT 19.)  The

21

22       [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security
23 Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under
both benefit structures, the term "disability" is defined, in part, as an "inability to engage in any
24 substantial gainful activity" due to "any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or can be expected to last for a
25 continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520,
26 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

1  ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

2  plaintiff's request for review.  (AT 4-6.)

3          B.     Summary of Relevant Medical History and Evidence

4          The facts of the case are set forth in detail in the transcript of proceedings, and are

5  briefly summarized here.  At the time of his hearing before the ALJ, plaintiff was 20 years old.

6  (AT 22.)  Plaintiff has been diagnosed in the past with Asperger's syndrome and/or high-

7  functioning autism.[3]  The ALJ found, albeit somewhat reluctantly, that plaintiff's autism is

8  ////

9

10  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

11          Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

12          Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is

13  appropriate.

14          Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically

15  determined disabled.  If not, proceed to step four.

16          Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

17          Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not

18  disabled.  If not, the claimant is disabled.

19  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

20          The claimant bears the burden of proof in the first four steps of the sequential evaluation

21  process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

22      [3]  As cited by plaintiff, Asperger syndrome is a developmental disorder that is characterized by limited interests or an unusual preoccupation with a particular subject to the

23  exclusion of other activities; repetitive routines or rituals, peculiarities in speech and language, such as speaking in an overly formal manner or in a monotone, or taking figures of speech

24  literally; socially and emotionally inappropriate behavior and the inability to interact successfully with peers; problems with non-verbal communication, including the restricted use of gestures,

25  limited or inappropriate facial expressions, or a peculiar, stiff gaze or clumsy and uncoordinated motor movements.  (See Dkt. No. 22 at 5, citing http://www.ninds.nih.gov/disorders/asperger/

26  detail_asperger.htm.)

1  severe:

2              I find little evidence of a severe disorder and generally concur with
3              the finding of the State nonexamining DDS medical consultant that
            the claimant has no medically determinable mental impairment
4              (Exhibit 5F).  However, I find that the claimant is entitled to the
            benefit of the doubt that he has some limitations due to very mild
5              and high functioning autism.  Accordingly, I find that the
            claimant's autism is severe.

6  (AT 18.)

7         While in middle school, plaintiff received a variety of psychoeducational

8  evaluations and assessments.  (AT 415-17).  One evaluation revealed that plaintiff met the

9  criteria for special education because he was classified as "Emotionally Disturbed."  (AT 416.)

10  Thereafter, he was seen on an outpatient basis for mental health treatment and medication at the

11  Shasta County Community Mental Health Center.  (AT 417.)  Plaintiff received a medical

12  evaluation in October 2004 by Dr. Lisa Benaron, M.D.  (AT 448.)  She concluded that plaintiff

13  qualified for the diagnosis of neurobehavioral disorder (alcohol exposed).  (AT 446.)  She

14  diagnosed plaintiff with high-functioning autism disorder.  (AT 447.)

15         Dr. Sid Cormier, Ph.D., conducted a further psychological evaluation of plaintiff

16  when plaintiff was 18.  (AT 449.)  On August 15, 2005, Dr. Cormier found that plaintiff was of

17  above-average intelligence and discerned no psychological conditions that would impair

18  plaintiff's ability to maintain work attendance or complete work activities on a regular basis.

19  (AT 454.)  Dr. Cormier found that plaintiff may be initially tentative in interactions with co-

20  workers, due to his history of autism, but that he was potentially fully functional outside of a

21  supportive situation, and that Dr. Cormier suspected that plaintiff had become unnecessarily

22  dependent upon his mother.  (Id.)

23         At the hearing before the ALJ, plaintiff testified that he received about $400-$500

24  a month from his current employer, Calaveras Lumber.  (AT 478.)  He testified that he had

25  worked for that employer approximately 15 to 20 hours a week, for approximately one year.  (AT

26  479.)  Plaintiff testified that if the job were offered to him on a 40-hour a week basis that he

4

1   would accept it.  (AT 481.)  Plaintiff testified that although he was currently living with his

2   mother and step-father, he would be able to care for himself, clean his own house and take care

3   of his own personal hygiene if afforded the opportunity.  (AT 483.)  Plaintiff's mother testified

4   that she did not believe that plaintiff would be able to live on his own and that he engaged in

5   various behaviors which others would find socially inappropriate.  (AT 499-505.)

6           Upon questioning from the ALJ, the vocational expert testified that a 20-year-old

7   individual who has completed the twelfth grade would be able to engage in a variety of jobs even

8   if limited to "simple instructions and relative or repetitive processes."  (AT 518.)  The vocational

9   expert stated that there were such positions available in sufficient numbers in the California

10  economy for a person subject to these limitations, and gave examples such as an automobile

11  detailer, car wash attendant or dishwasher.  (Id.)  Plaintiff's attorney then asked the vocational

12  expert the following:

13          Mr. Detmer, if you could please add these additional criteria to the
            Administrative Law Judge's hypothetical number one where the
14          worker would require frequent to near constant visual supervision.
            And during periods of time where there wasn't actual visual
15          supervision he would need to be checked on approximately every 15
            minutes to see that he was remaining on task.
16
17          And also add to this hypothetical that he has an inability to control, for
            lack of a more politically correct phraseology, inability to control
18          weird bodily affect or presentation that would include eating mucous,
            eating scabs from his forearm and just seeming to do this with utter
19          carefree abandon during the, the workday.  And that he would also
            periodically have tantrums where he would growl at people and walk
20          away from supervisors.  And I'd also layer into this hypo an apparent
            inability, not an unwillingness but an apparent inability, to maintain
21          focus, pace or concentration on any particular task, even a simple task,
            for more than an hour.

22  (AT 519-20.)  The vocational expert responded "I think that's too much to ask of, for competitive

23  employment, the hypotheticals that you have given me there. . . So I wouldn't think that person

24  would be able to hold down a steady job with those behaviors."  (AT 520.)  The ALJ took the

25  matter under submission and subsequently issued a written decision.

26  ////

5

1            C.      Summary of the ALJ's Findings

2            The ALJ conducted the required five-step evaluation and concluded that plaintiff

3    was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff has

4    not engaged in substantial gainful activity since April 18, 2005, the application date.  (AT 18.)

5    At step two, the ALJ concluded that plaintiff had the severe impairment of high functioning

6    autism.  (AT 18.)  At step three, he determined that plaintiff's impairment did not meet or

7    medically equal one of the impairments listed in the applicable regulations.  (AT 18.)  The ALJ

8    further determined that plaintiff had the residual functional capacity ("RFC") to perform a full

9    range of work at all exertional levels but with the following nonexertional limitations:  he is

10   limited to jobs which require only simple instructions.  (AT 19.)  The ALJ found, at step four,

11   that plaintiff was unable to perform any past relevant work, because he had none.[4]  (AT 21-22.)

12   Finally, the ALJ found, at step five and in reliance on plaintiff's RFC, that there are jobs that

13   exist in significant numbers in the national economy that the claimant could perform, considering

14   his age, education and work experience.  (AT 22.)  The Social Security Appeals Council rejected

15   review of plaintiff's case because it found no reason under its rules to review the ALJ's decision.

16   (AT 4.)

17   II.    ISSUES PRESENTED

18           Plaintiff contends that the ALJ committed errors in reviewing plaintiff's claim.

19   First, plaintiff argues that the ALJ erred by failing to accurately characterize the medical evidence

20   and credit the opinions of the treating and examining physicians and psychologists without

21   legally adequate reasons for doing so.  (Pl.'s Mot. for Summ. J. at 2.)  Second, he argues that the

22   ALJ improperly rejected plaintiff's and third party statements regarding his functional limitations

23   without clear and convincing reasons for doing so.  (Id.)  Third, he contends that the ALJ failed

24   _____

25          [4]  The ALJ recognized that plaintiff was currently employed at a lumber yard, but that
     based on his pay stubs he is earning less than substantial gainful activity ("SGA").  Therefore, the
26   ALJ did not consider this work as "past relevant work."  (AT 22.)

1    to properly assess his RFC or credit the vocational expert's response to a hypothetical which

2    more accurately characterized his true functional limitations.  (Id.)

3    III.    STANDARDS OF REVIEW

4              The court reviews the Commissioner's decision to determine whether it is (1) free

5    of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

6    Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

7    Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

8    Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "Substantial evidence means

9    more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

10   reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

11   Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

12   1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

13   Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining

14   credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews,

15   53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he

16   ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

17             Findings of fact that are supported by substantial evidence are conclusive.  42

18   U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the

19   evidence as a whole can support either a grant or a denial, [the court] may not substitute [its]

20   judgment for the ALJ's."  Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149,

21   1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir.

22   2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's

23   decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

24   However, the court "must consider the entire record as a whole and may not affirm simply by

25   isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting

26   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue,

1    504 F.3d 1028, 1035 (9th Cir. 2007).

2    IV.    ANALYSIS

3           A.    The ALJ Properly Characterized The Record

4                 Plaintiff's initial contention is that the ALJ erred by failing to credit the opinions

5    of certain treating and examining physicians and psychologists without legally adequate reasons

6    for doing so.  (Pl.'s Mot. for Summ. J. at 27-31.)  Plaintiff contends that the 2001 report of Dr.

7    McKellar and the 2002 report of Drs. Liebscher and Brown reflected that plaintiff exhibited

8    difficulty interacting appropriately with peers and adults and that he was extremely immature.

9    (Dkt. No. 22 at 28.)   Additionally, plaintiff contends that the ALJ erred in failing to address a

10   2004 evaluation by Dr. Bernaron wherein she stated, inter alia, that plaintiff was substantially

11   handicapped in a number of areas.  (Id. at 29.)

12                The Commissioner argues in response: (1) that the ALJ was not required to

13   discuss, much less reject the opinions of the referenced doctors because they were given before

14   the relevant period on review by the ALJ; (2) that the treating doctors reports did not identify any

15   limitations inconsistent with the ALJ's RFC finding; and (3) even if considered timely, the

16   challenged treating doctors' opinions would not render plaintiff disabled .  (Def.'s Opp'n &

17   Cross-Motion for Summ. J. at 6-9.)

18                The medical opinions of three types of medical sources are recognized in social

19   security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

20   do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

21   claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

22   Generally, a treating physician's opinion should be accorded more weight than opinions of

23   doctors who did not treat the claimant, and an examining physician's opinion is entitled to

24   greater weight than a non-examining physician's opinion.  Id.  Where a treating or examining

25   physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear

26   and convincing" reasons for rejecting the treating physician's ultimate conclusions.  Id.  If the

1   treating or examining doctor's medical opinion is contradicted by another doctor, the

2   Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion,

3   and those reasons must be supported by substantial evidence in the record. Id. at 830-31; accord

4   Valentine, 574 F.3d at 692.  While a treating professional's opinion generally is accorded

5   superior weight, if it is contradicted by a supported examining professional's opinion (supported

6   by different independent clinical findings), the ALJ may resolve the conflict.  Andrews, 53 F.3d

7   at 1041 (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ

8   need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v.

9   Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally

10  supported opinion rejected); see also Magallanes, 881 F.2d at 751.

11          Preliminarily, the court finds the Commissioner's contention that the ALJ was not

12  required to evaluate evidence outside the twelve month period preceding the month in which the

13  claimant filed his application for benefits to be overbroad and unsupported by legal authority.

14  Although the Commissioner cites to 20 C.F.R. § 416.912(d)(2) for the blanket proposition that

15  the legal standards applicable to social security cases only require consideration of the evidence

16  dating within the twelve month period prior to the benefit application date, that regulation is not

17  quite so conclusive.  It provides that a claimant's complete medical history includes "the records

18  of your medical source(s) covering *at least* the 12 months preceding the month in which you file

19  your application." 20 C.F.R. § 416.912(d)(2) (emphasis added).  The court can imagine a wide

20  variety of circumstances under which the acquisition and review of evidence outside this twelve

21  month period could be necessary.  Accordingly, the court will, as the ALJ did, consider the entire

22  record before it in reviewing the ALJ's conclusion in this case.

23          Plaintiff argues that the ALJ's denial of benefits was based on his erroneous

24  adoption of the position of Dr. Cormier, the social security consultative examiner.  Dr. Cormier's

25  2005 psychological evaluation noted that although plaintiff had a history of autism, he had an

26  above average intelligence quotient and did not evidence autism or ADHD during the

9

psychological evaluation.  Dr. Cormier concluded:

> I could discern no psychological condition that would impair his
> ability to maintain regular attendance, or perform work activities
> on a consistent basis.  Since he is naive and immature he may
> require some initial special supervision.  His ability to complete a
> normal workday or workweek without interruptions resulting from
> any psychological condition does not appear significantly impaired
> at this time. . . .  If his history of autism is correct he may be
> somewhat tentative in his interactions with coworkers in the
> general public, at least initially.  However, he indicated that he has
> several friends and is relating to people reasonably well. . . .

(AT 454).  Plaintiff contends that the opinion of Dr. Cormier was an "extreme deviation" from

the consensus of opinion and was not supported by substantial evidence.  (Dkt. No. 22 at 31.)

Further, plaintiff argues that where, as here, the ALJ fails to provide adequate reasons for

rejecting the opinion of a treating or examining physician, that such an opinion should be

credited "as a matter of law."  (Id. at 31 (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

1996)).

    First, the other doctor's opinions that plaintiff claims were improperly rejected are

not inconsistent with Dr. Cormier's more recent opinion.  None of those physicians concluded

that plaintiff could not perform simple, repetitive tasks in the workplace or that he was disabled

from engaging in substantial gainful activity.  (AT 329-34, 415-19, 435-38.)  Dr. McKellar, who

assessed plaintiff when he was in the eighth grade, found that plaintiff's mental health was

normal but that he qualified for government mental health services due to his inability to connect

with others socially and academically.[5]  (AT 418-19.)  The ALJ also referenced Dr. Harris's

nonexamining opinion, which corroborated Dr. Cormier's conclusion.  (AT 21, 459.)

    Drs. Liebscher and Brown, who evaluated plaintiff when he was 14 years old, did

not speak to plaintiff's ability to perform simple repetitive tasks in the workplace.  Rather, their

---

   [5]  As defendant notes, unskilled work deals "primarily with objects, rather than with data
or people," and thus Dr. McKellar's opinion is not inconsistent with Dr. Cormier's finding that
plaintiff has the ability to function independently and is not disabled.  (Dkt. No. 26-1 at 8,
quoting Social Security Regulation ("SSR") 85-15.)

10

2002 opinion focused on evaluating and improving plaintiff's school and social skills, and found that the "current evaluation" indicates that plaintiff has Asperger's Disorder.  (AT 333.)  Nothing in their opinion is inconsistent with Dr. Cormier's opinion that plaintiff can perform simple, repetitive tasks.

Similarly, Dr. Benaron's evaluation from 2004 when plaintiff was seventeen years old is not inconsistent with Dr. Cormier's conclusion.  Dr. Benaron concluded that plaintiff had high functioning autism, most likely due to exposure to alcohol in utero.  (AT 446.)  She concluded that he would have difficulty in a variety of areas of life, including self-direction and self-sufficiency, and that he would benefit from job coaching and should discuss his eligibility at Core Staff.  Dr. Benaron did not conclude that plaintiff could not become gainfully employed or perform simple, repetitive tasks.

The ALJ stated in his written decision that he did consider the entire record in making his findings.  (AT 16, 18).  More importantly, the ALJ included the diagnoses cited by plaintiff among plaintiff's severe impairments at step two of the five-step analysis.  (AT at 18 "I find little evidence of a severe disorder and generally concur with the finding of the State nonexamining DDS medical consultant that the claimant has no medically determinable mental impairment. . . .  However, I find that the claimant is entitled to the benefit of the doubt that he has some limitations due to very mild high functioning autism.  Accordingly, I find that the claimant's autism is severe.").  Further, at step three of the analysis, the ALJ considered at length plaintiff's mental health history and symptoms in resolving whether plaintiff's mental impairments met or equaled a listing in the regulations.  (See AT 18-19.)  Thus, the ALJ did not fail to consider relevant doctor's opinions.  See Tommasetti, 533 F.3d 1041-42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.") (citing Andrews, 53 F.3d at 1039-40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.")).

In arriving at the plaintiff's RFC, that plaintiff was able to perform a full range of

1   work at all exertional levels but with the limitation that his jobs require only simple instructions,

2   the ALJ supported his determination with substantial evidence.  He recounted at length plaintiff's

3   testimony, testimony of lay witnesses, and various mental health reports.  He noted that plaintiff

4   had suffered a difficult childhood and family situation, that plaintiff's mother felt plaintiff could

5   not live on his own, that plaintiff engaged in some inappropriate behavior, that he had bounced a

6   few checks and that he did not focus well.  (AT 20-21.)  The ALJ also recognized that Dr.

7   Benaron's report reflected prior diagnoses of Asperger's syndrome, ADHD and autism, and that

8   plaintiff had applied for 50 jobs after high school but was not hired.  (AT 21.)

9          However, the ALJ also observed that plaintiff testified that he thinks he could live

10   on his own, that he was able to work part-time at the lumber yard and would work full-time if the

11   lumber yard offered him such a position.  (AT 20.)  Plaintiff testified that he had social

12   interactions with friends and has hobbies.  (Id.)  Further, the ALJ observed that Dr. Cormier

13   opined that plaintiff was psychologically dependent on his mother, but that there was no reason

14   that he could not perform simple repetitive tasks, and even some detailed or complex tasks on a

15   regular basis in a competitive workplace.  (AT 21.)

16          In sum, the ALJ thoroughly reviewed the record, as has the undersigned.  The ALJ

17   appropriately arrived at the plaintiff's RFC which is supported by substantial evidence and free

18   of legal error.

19   B.     The ALJ Properly Evaluated The Testimony Of Plaintiff And Third Parties

20          Plaintiff next contends that the ALJ's summary of plaintiff's testimony was

21   "overly optimistic and failed to accurately reflect the extent of his functional limitations."  (Dkt.

22   No. 22 at 32.)  Plaintiff argues, in essence, that the ALJ should have taken a more pessimistic

23   view of plaintiff's own testimony, which in virtually all respects countered a finding of disability.

24          In evaluating whether subjective complaints are credible, the ALJ should first

25   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

26   F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

1   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

2   medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

3   (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

4   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

5   prescribed course of treatment; and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

6   1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature,

7   severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

8   relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  However,

9   an ALJ's credibility determinations should not be reversed "based on contradictory or ambiguous

10  evidence."  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (emphasis added).

11          As detailed above, plaintiff's testimony was overall very positive and optimistic,

12  and there was little testimony, if any, provided by plaintiff which would conflict with the ALJ's

13  RFC determination.  An ALJ may consider admissions against a claimant's interest in assessing

14  whether that claimant is disabled.  Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995).

15  Plaintiff testified that in his work at the lumber yard he stands and walks all day, lifts up to 50

16  pounds, and sometimes interacts with customers.  (AT 20.)  The court finds no legal error in the

17  ALJ's treatment of plaintiff's testimony, which overwhelmingly supported the conclusion that

18  plaintiff was not disabled.

19          Plaintiff also disagrees with the ALJ's consideration of plaintiff's third-party

20  witness testimony, particularly the ALJ's summary of plaintiff's mother's testimony and the

21  statement of plaintiff's step-father.  This argument fails for several reasons.  First, the ALJ is

22  entitled to reject lay witness testimony that is inconsistent with plaintiff's own accounts of his

23  limitations.  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) ("In all, the ALJ at least noted

24  arguably germane reasons for dismissing the family members' testimony, even if he did not

25  clearly link his determination to those reasons.  Substantial evidence supported the ALJ's

26  decision to discount the family members' testimony.").  Second, the testimony of the mother and

13

1   lay witnesses would not establish that plaintiff is incapable of performing simple, repetitive

2   tasks.  For instance, plaintiff's mother testified that plaintiff completed a recipe for chicken that

3   was complex and involved a lot of spices, but that he burnt the pan.  (AT 499-500.)  Further,

4   plaintiff's mother's testimony, for example, that he did not always remember to take out the

5   clothes that she did not want dried from the clothes dryer does not exhibit an inability to perform

6   simple repetitive tasks.  (AT 501.)

7            The evidence referenced by plaintiff appears immaterial to the plaintiff's ability to

8   become gainfully employed— even if fully credited, it would not render plaintiff disabled.

9   Plaintiff cites to no authority which mandates that lay witness statements generally regarding

10  plaintiff's overall personality, inappropriate behavior, lack of kindness to children,

11  noncompliance with requests from an adult and other bad habits would render him unable to

12  perform simple, repetitive tasks, particularly when faced with the contradictory medical record

13  which says that he is able to do so.  The ALJ was not required to discuss each piece of evidence,

14  and it does not appear that he even actually rejected probative evidence.  See Vincent v. Heckler,

15  739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (affirming a denial of benefits where the

16  ALJ did not discuss certain testimony and recognizing that the ALJ need not discuss all evidence

17  presented to him unless it is significant or probative").  Rather, the ALJ properly resolved

18  conflicts in the significant evidence, and after reviewing the opinion of the consultative

19  examiner, other doctor's reports, the witness testimony and other evidence of record, determined

20  that plaintiff was not entitled to benefits.[6]  Substantial evidence supported that determination.

21  ////

22

23       [6] Plaintiff also complains about the Appeals Council's rejection of additional lay witness
    statements submitted to it after the issuance of the ALJ's opinion.  (Dkt. No. 22 at 35-36.)  The
24  Appeals Council considered the statements, and found that they did not provide any additional
    clinical or laboratory evidence to warrant a change in the ALJ's opinion.  (Id.)  Plaintiff provides
25  no authority directing a different result, and the court is aware of none.  Dr. Cormier's opinion
    that plaintiff could perform simple repetitive tasks and a number of complex tasks, and Dr.
26  Harris's concurrence that plaintiff was not unable to perform simple repetitive tasks provide
    probative contrary evidence in this regard.  (AT 451-59.)

1    Moreover, to the extent that plaintiff asserts that the ALJ made any adverse

2    credibility findings, a presumption which the court does not necessarily accept for the reasons set

3    forth above, those findings are supported by clear and convincing evidence in the record and the

4    court may not engage in "second-guessing" the ALJ's conclusions.  Thomas v. Barnhart, 278

5    F.3d 947, 958-59 (9th Cir. 2002).  The ALJ's findings are entitled to deference where, as here,

6    they are sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected

7    the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's

8    testimony.  See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991).

9    C.    The ALJ's Hypothetical Question To The Vocational Expert Was Proper

10    In a variation of the argument raised in subsection A above, plaintiff contends that

11    because the ALJ did not have specific and legitimate reasons for rejecting the limitations to

12    which certain physicians and testifying witnesses opined about, the ALJ's conclusion about the

13    plaintiff's RFC was improper.  Thus, plaintiff continues, the hypothetical question premised on

14    this RFC and presented to the vocational examiner ("VE") was improper.  (Dkt. No. 22 at 38-39.)

15    Plaintiff contends that the hypothetical to the VE presented by his attorney, which allegedly

16    included all of the limitations established by the "overwhelming evidence of record," properly

17    accounted for plaintiff's limitations and the VE's responsive testimony that any person exhibiting

18    such a degree of symptoms would not be employable should have been credited.

19    As discussed above, the ALJ properly posed a current hypothetical question to the

20    VE by including the limitations supported by substantial evidence.  See Robbins v. Soc. Sec.

21    Admin., 466 F.3d 880, 886 (9th Cir. 2006) ("As the Commissioner correctly recognizes, in

22    hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported

23    by substantial evidence.").  Here, the ALJ asked the VE whether an individual, without past

24    relevant work, who was of plaintiff's age and education, could perform simple and repetitive

25    work.  This query adequately includes all supported limitations.  The VE testified that there were

26    a substantial number of jobs for such a person given those limitations.  (AT 518.)  Conflicts in

15

1   the evidence are to be resolved by the Commissioner.  Sprague v. Bowen, 812 F.2d 1226, 1230

2   (9th Cir. 1987).  The ALJ properly reasoned that the record supports plaintiff's ability to make a

3   successful adjustment to other work that exists in significant numbers in the national economy.[7]

4           Alternatively, the ALJ's error, if any, was harmless.  Even if the ALJ failed to

5   include all of plaintiff's perceived mental limitations in his RFC assessment, any error was

6   harmless because substantial evidence supported the ALJ's conclusion that plaintiff's mental

7   limitations did not impair his capacity to perform unskilled work.  See Stout v. Comm'r, 454

8   F.3d 1050, 1055 (9th Cir. 2006) ("We have . . . affirmed under the rubric of harmless error where

9   the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability

10  conclusion.").  Any error based on the hypothetical proposed to the VE which purportedly failed

11  to include all of plaintiff's alleged limitations is harmless because substantial evidence supports

12  the ALJ's finding that plaintiff is minimally compromised in his ability to work.  See, e.g.,

13  Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (finding that a hypothetical that limited

14  a claimant to simple and repetitive work adequately accounted for a finding of borderline

15  intellectual functioning).  In sum, the ALJ's findings contain numerous specific and legitimate

16  reasons for rejecting a conclusion that plaintiff was disabled under the terms of the Act and could

17  not work.

18  V.      CONCLUSION

19          Based on the foregoing, IT IS HEREBY ORDERED that:

20          1.      Plaintiff's motion for summary judgment or remand is denied;

21          2.      The Commissioner's cross-motion for summary judgment is granted; and

22  ////

23  ////

24

25          [7] Plaintiffs brief, nearly 40 pages long, discusses a host of factual issues.  The court has endeavored to reach all of plaintiff's claims of error in this order.  The court has fully and thoroughly considered the entire record and all briefing in this case, and any of plaintiff's
26  remaining contentions are unpersuasive.

16

1          3.      Judgment be entered in favor of the Commissioner.

2    DATED:  August 25, 2010

3

4

5

6                                                KENDALL J. NEWMAN
                                                 UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26